## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 4:23-cr-10002-Moore

UNITED STATES OF AMERICA

v.

BATYR MYATIEV,

     Defendant.

## UNITED STATES' SENTENCING MEMORANDUM

Batyr Myatiev owned and operated several labor staffing companies in Key West. Through these labor staffing companies, Myatiev and his conspirators facilitated the employment in the hospitality industry of hundreds of alien workers who were not authorized to work in the United States. Myatiev and others issued paychecks to those workers for their untaxed earnings, causing a tax loss to the United States of more than $6.8 million between January 2011 and November 2020. Given his conduct, the government respectfully requests that the Court sentence Myatiev to 36 months' imprisonment.

### I.  Factual Summary and Procedural Background

At various points between January 2011 through November 2020, Myatiev, unindicted conspirators V.L. and G.C., and others operated several labor staffing companies, including (i) Vita Solutions, Inc., (ii) Golden Coral Total Service, Inc., (iii) Best Results Total Services, Inc., (iv) Amer Hosp, LLC, and (v) Golden Sands Management, LLC.

Through these labor staffing companies, Myatiev, V.L., G.C., and others (collectively, the Myatiev crew) facilitated the employment in the hospitality industry of non-resident aliens who

1

were not authorized to work in the United States. By obtaining and paying workers through the Myatiev crew's labor staffing companies, hotels, bars, and restaurants operating in Key West and elsewhere attempted to disclaim responsibility for ensuring that: (1) workers were legally authorized to work in the United States, and (2) federal income and employment taxes were withheld and paid over to the IRS. For their services, the Myatiev crew charged the hotels, bars, and restaurants a fee, usually in the range of $1 to $1.50 per hour worked by the alien workers.

Often, these labor staffing companies' customers would find a worker that they wanted to hire and then instruct the Myatiev crew that the labor staffing company had a new employee. Sometimes, the customer was blatant about why the worker had to work through a contractor, such as sending the labor staffing company a copy of the new worker's foreign passport. Other times, the Myatiev crew found the workers and referred them to the hotels, bars, and restaurants.

Through this business, the Myatiev crew facilitated the employment of thousands of workers. The Myatiev crew never verified workers' eligibility to work in the United States. The USCIS Form I-9, Employment Eligibility Verification, requires that an employee attest to their authorization to work in the United States. In conjunction with the Form I-9, the employee needs to present to the employer documents evidencing identity and employment authorization. Federal law requires the employer to examine the employment eligibility and identity documents to determine whether the documents appear to be genuine and relate to the employee. The employer must record employee identity information on the Form I-9 and maintain the records onsite. Nevertheless, the Myatiev crew did not conduct any Form I-9 verifications or any other immigration checks for its workers, and they knew that the hotels, bars, and restaurants were not doing so either. In fact, Myatiev and his conspirators *knew* that these labor staffing companies

were facilitating the employment of hundreds—if not thousands—of alien workers who were not authorized to work in the United States.

The Myatiev crew issued paychecks to the workers for their *untaxed* earnings.[1]  The crew did not withhold any payroll taxes from the paychecks and did not pay over the requisite payroll taxes to the IRS. The crew did not issue IRS Forms W-2, a summary of annual wages and withholdings given to employees, to the workers. If a worker requested, the crew would issue an IRS Form 1099, an annual summary of payments given to independent contractors. In reality, however, few workers ever requested or received an IRS Form 1099. Myatiev's operation of these labor staffing companies caused a tax loss to the United States of more than $6.8 million over almost a decade.

In January 2023, Myatiev was charged in a one-count Information with a multi-object conspiracy, in violation of 18 U.S.C. § 371, to (1) impede, impair, obstruct, and defeat the lawful government functions of the IRS in the ascertainment, computation, assessment, and collection of federal income taxes and employment taxes, (2) encourage and induce aliens to come to, enter, or reside in the United States knowing or in reckless disregard of the fact that such coming to, entry, or residence was or would be in violation of law, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv); and (3) conceal, harbor, and shield from detection aliens knowing or in reckless disregard of the fact

---

[1] The Federal Insurance Contribution Act (FICA) requires employers to withhold Medicare and Social Security taxes from their employees' wages. The Internal Revenue Code also requires employers to withhold federal income taxes from their employees' wages. Employers are supposed to hold these withheld taxes in trust for the United States and are required to pay them over to the IRS on behalf of their employees. Accordingly, these withheld taxes are collectively referred to as "trust fund taxes." In addition to the trust fund taxes, employers are required to pay over an employer portion of FICA taxes.

that such aliens had come to, entered, or remained in the United States in violation of law, in violation of 8 U.S.C.§ 1324(a)(1)(A)(iii). Dkt. No. 1. On March 23, 2023, Myatiev pleaded guilty to the information pursuant to a plea agreement. Dkt. Nos. 12-14.

## II.      Sentencing Guidelines

Following *United States v. Booker*, 543 U.S. 220 (2005), a framework has developed by which a court determines a defendant's appropriate sentence. First, the sentencing court must properly calculate the advisory range of imprisonment under the Sentencing Guidelines. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). After calculating the range, the district court must "giv[e] both parties an opportunity to argue for whatever sentence they deem appropriate" and "then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.*

In his plea agreement, Myatiev agreed that the tax loss arising from his conduct was more than $3.5 million, which results in an offense level of 24 under U.S.S.G. §§ 2T1.9(a)(1), 2T4.1(J). Dkt. No. 13, ¶ 6(a). The parties also agreed that Myatiev was subject to a two-level aggravating role enhancement under U.S.S.G. § 3B1.1(C). *Id*., ¶ 6(c). Myatiev accepted responsibility by pleading guilty in a timely manner, resulting in a three-level reduction under U.S.S.G. § 3E1.1. Given a total offense level of 23 and a Criminal History Category of I, Myatiev's Guidelines range is 46 to 57 months.

## III.     Recommended Sentence

The Court must consider the § 3553(a) factors in fashioning a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing. The Court must also avoid unwarranted sentencing disparities. The nature and circumstances of the offense, the need to

promote respect for the law, and to afford adequate deterrence, both specific and general, support a substantial prison sentence.

**A.      The Nature and Circumstances of the Offense**

Myatiev has admitted to egregious criminal conduct. He and others entered into written contracts and oral agreements with hotels, bars, and restaurants in Key West and elsewhere to provide labor staffing services through Myatiev's labor staffing companies. These agreements helped the Myatiev crew's customers attempt to disclaim responsibility that workers were legally authorized to work in the United States and that federal employment taxes were withheld and paid over to the IRS. Myatiev facilitated the employment of thousands of alien workers knowing or in reckless disregard of the fact that those alien workers were not legally present in the United States and did not have authorization to work here. Myatiev paid the workers their untaxed earnings and did not report the payments to the IRS. In total, Myatiev and his conspirators caused a tax harm to the United States of over $6.8 million in the near decade that Myatiev owned and operated his labor staffing companies.

**B.      The History and Characteristics of the Defendant**

Although Myatiev does not have a criminal history, his criminal conduct was not an isolated event. He operated these labor staffing companies from January 2011 through November 2020. During the entirety of this time, Myatiev facilitated the employment of aliens who were not authorized to work in the United States and failed to withhold and pay over employment taxes to the IRS.

**C.      Reflecting the Seriousness of the Offense, Promoting Respect for the Law, and Providing Just Punishment for the Offense**

As explained above, Myatiev's conduct was serious. He and his conspirators caused serious harm to the United States. In the near decade over which Myatiev owned and operated his labor staffing companies, his crew caused a tax harm to the United States of over $6.8 million. By facilitating the employment of workers who were not authorized to work in the United States and by failing to withhold and pay over employment taxes, the Myatiev crew's conduct put employers who were compliant with immigration and tax laws at a competitive disadvantage.

And, by failing to tax the workers' wages, the Myatiev crew essentially robbed the federal government of taxes to fund Medicare and Social Security—not to mention federal income taxes. This failure further reinforces the seriousness of Myatiev's offense given that "taxes are the lifeblood of the government, and their prompt and certain availability an impervious need." *Bull v. United States*, 295 U.S. 247, 259 (1935). That Myatiev's criminal conduct spanned nearly a decade demonstrated his lack of respect for the law. A substantial prison sentence is thus warranted.

**D.      Affording Adequate Deterrence to Criminal Conduct and Protecting the Public from Future Crimes of the Defendant**

The need for deterrence, both specific and general, is critical here. Myatiev engaged in significant criminal conduct and did not close his labor staffing companies until after he was interviewed by federal law enforcement. A prison term is necessary to protect the public from future crimes of the defendant. *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment."). Moreover, the need

for general deterrence is paramount. Labor supply is a significant issue in Key West. On the island, a system has developed in which the hospitality industry uses labor staffing companies (also known as contractors or contract companies) such as the ones operated by the Myatiev crew to counteract labor shortages. The predominant purpose of labor staffing companies like Myatiev's was to facilitate the hiring of individuals whom their customers could not hire directly—that is, aliens who were not authorized to work in the United States. A substantial prison sentence is necessary to ensure that others are not tempted by the quick profit or other improper economic advantage to engage in the same criminal conduct as Myatiev and his conspirators. *See Martin*, 455 F.3d at 1240; U.S.S.G. Ch. 2, Pt. 2, intro. comment. (emphasizing the goal of general deterrence in sentencing for criminal tax offenses).

### E.      Providing the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

The defendant has no educational, medical, or other correctional treatment that warrants a non-prison sentence.

### F.      Avoiding Sentencing Disparity

The Sentencing Commission specifically designed the Guidelines to reduce disparity in sentencing for tax offenses and to reduce the number of probationary sentences in tax cases, noting that:

> Under pre-guidelines practice, roughly half of all tax evaders were sentenced to probation without imprisonment, while the other half received sentences that required them to serve an average prison term of twelve months. This guideline is intended to reduce disparity in sentencing for tax offenses and to somewhat increase average sentence length. As a result, the number of purely probationary sentences will be reduced.

U.S.S.G. § 2T1.1, comment. (backg'd.). A substantial prison sentence commensurate with the

Guidelines range is appropriate here to avoid sentencing disparity.

## IV.    Restitution

Myatiev agreed to pay restitution for the tax loss to the United States arising from unpaid federal employment taxes for quarters ending March 31, 2011, through December 31, 2020. *See* 18 U.S.C. § 3663(a)(3). Dkt. No. 13, ¶ 11. Based on the unpaid FICA taxes from the wages paid to the workers on the labor staffing companies' payroll for these quarters (and excluding any additional income taxes that should have been collected from the workers), Myatiev should be ordered to pay restitution in the total amount of $6,869,869.80. This restitution should be ordered to be paid jointly and severally among Myatiev and any conspirators who may be charged in the same scheme.

## CONCLUSION

For all the reasons set forth in this memorandum, the United States submits that an individualized assessment based on the facts presented to the Court warrants a prison sentence for Myatiev. A sentence of 36 months is appropriate.

Respectfully submitted,

MARKENZY LAPOINTE
United States Attorney

Sean Beaty, Senior Litigation Counsel
District Court No. A5501870
Matthew C. Hicks, District Court No. A5502778
Wilson Rae Stamm, District Court No. A5503006
Trial Attorneys
U.S. Department of Justice, Tax Division
Christopher Clark, Florida Bar No. 0588040
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

_____
Sean Beaty, Senior Litigation Counsel